May I proceed? Please. May it please the court. Good morning, Your Honors. I am Tanya L. Whiteleather. I represent Monica Beauchamp, the plaintiff in a due process, a petitioner, parent of the petitioner, a due process matter, plaintiff in a federal court matter, and the appellant herein. The issue here basically comes down to the rejection of a settlement offer by a district and whether that result that was obtained by the parent was more favorable than that offered in the September 28, 12 letter, and whether the parent was substantially justified in rejecting that. There are other issues regarding rates, which were addressed in the JE matter, the parent's rates I will touch briefly on, but I think the main issues are the substantially justified and the more favorable. We have done, I think, a very thorough job of briefing on this. We have a situation where an offer was made. The offer itself was not really an offer. The offer was an offer to make an offer. It did not include all of the terms. It indicated that industry standard terms would be included if the parents accepted the basic terms that were being offered. The final terms were not identified. Parents did not accept that because of the lack of terms and because of the... Did they ask for the standard terms? There are no standard terms. Well, they presented an offer saying, here are the, here's what we'll give you, and of all such settlement agreements would have, so you'd assume there'd be releases and the like. So did your client request a copy of the additional terms that they referenced in their settlement offer? No, not specifically, but prior to that date, we had requested that the district include in any determination, any settlement offer, the issue that we had brought to hearing, which was crucial because the pending case, the JE case, and in that crucial issue, we had a determined issue regarding child fine and whether the child was eligible for special education services prior to his removal. And so we had told just days before, had indicated to the district and prior to receiving the offer, we needed to address child fine and the issue that was pending. But you see, one of the concerns I have about that is that it really, and particularly when you look at any relationship to Rule 68, is that a settlement offer is generally that. It settles that case, and it's typical in settlement offers that they're not necessarily making admissions or conciliation of certain issues. So I understand you felt that they were intertwined, but it seems to me that the settlement offer was made in this case, and so how, what's the authority to say, well, we're justified under the rules in rejecting that because we want an admission, I won't say of guilt, but admission of coverage, liability, responsibility. Do you have any cases that we would look at that would say that's how you evaluate it? Yes, and I do have a site I will get to in a minute, but there is a, we did file yesterday the case of Meridian, which is a 28-J letter with the court, which addresses the need to have a child fine determination made and a child found eligible for the issue of fees to even be before the court. The issue raised in that bifurcated, first bifurcated matter was one of child fines. I thought Meridian said that if the child is not disabled, then you don't get attorney's fees under the statute. How does that relate to a settlement? If we had set the settlement offer, and if you look at the letter that is ER-7778, that is the offer in the excerpts of record, if you look at that, that does not make any offer to resolve the issue of child fine. But does it offer attorney's fees? It offers attorney's fees. So it's irrelevant whether, for purposes of the attorney's fees in this case, it's irrelevant whether the child's disabled or not. For purposes of fining those, yes, for those fees, but for purposes of the pending case. So for the other cases on a going-forward basis, right, the child fine is retrospective and the other case is going forward? Is that why it was expedited? Yes. It's because with a removal of a student from placement, there is a process for an expedited hearing to determine the stay-put placement during the pendency of the hearing. So does a lack of a finding in the non-expedited case prevent a finding in the expedited case? Yes and no. No, it does not in the initial expedited, but that was pending on appeal. The district appealed the decision of the OAH administrative law judge. It was pending for the courts. And if there had been a finding that the student was not eligible prior to the day that he was removed, prior to the date that it became necessary to have an expedited hearing, that would have potentially defeated any claim that he was entitled to procedural rights as of that time. It was a very important issue, the child fine issue and the timing of the child fine issue. Well, I understand that it's important. We have a bifurcated hearing here, but when you're looking at the rules with respect to settlement, they're talking about relief and this is like a predicate to relief, but when you settle, you get to the end, you get to the relief, you don't get to the preliminary rulings that lead up to the relief. So maybe I'm missing something. So I'm still having some trouble understanding, given the two different cases, why you need to get a finding in this case. So there could be no settlement absent. In your view, there could be no legitimate settlement absent such an admission or statement, correct? Addressing the issues, and that would be our position in every case. If we raise issues that address the heart of the child's eligibility and the timing of his eligibility. But then if they give you a settlement that says, look, you're going to get fees and we offer you relief in the form of A, B, C, D, and E, and that relief, of course, is responsive to your claim, why do you need, it really seems to me to be your whole settlement structure here. In fact, this is where the House of Representatives 99th Congress, and this is in the reply brief at page two, says that when you have a pending court decision, which could have an impact on the case in question, then it is appropriate to make determinations regarding settlements and whatever terms are involved in that. And it's our contention, it's our firm belief that had we agreed. But were you saying that the expedited case was going to have an effect on the non-expedited case? No, there wasn't. I mean, isn't that what that language says? No. We have a pending case that's going to have an effect on your case. No. But you're saying it wouldn't, and that does seem to be the case. They seem to be separate. We're looking at it in terms of a pending case which would be impacted by the ruling, the decision on the child fine. The pending case being the appeal the district filed. Ms. Whiteleather, isn't it the case that they're not codependent upon each other? Incorrect. They are codependent of each, the red brief reference is a case from Northern California about a ruling is not relief. Is that incorrect? It is, we believe it's incorrect in that the ruling regarding the issue establishes a time frame in this case, and the time frame is relevant to the relief that was sought in the expedited. Well, let me ask you, you're not a prevailing party until you get some relief, are you? Correct. You've not changed the legal relationship between the parties until you get some relief, have you? That's correct. And on September 28th, 2012, you didn't have any relief, did you? On September 28th, we did not. That's correct. Now, I want to get back to where we started. Judge Fitzgerald says, this is in his findings, Beauchamp acknowledges that she and her counsel had received, quote, several industry standard general compromise and release agreements from the district and quote, were aware of the terms contained therein and previously rejected those terms. Therefore, those additional terms, which do not appear material to the settlement offer were already known to Beauchamp. Is that clearly erroneous? It's not clearly erroneous. The problem is that it is a, there is no, as we contended, there is no industry standard and what we have received from time to time is a set of terms. We get a different set of terms. It's not always the same. There is no industry standard in terms of those. We had received some additional terms in the process of a mediation, of a confidential mediation. Those terms, some of those we see, some of those we don't. So I don't mean to give you a yes and no, but it is, it's sort of a yes and no because there is no industry standard set of terms. What we had seen were what they considered, we believe, to be industry standard terms. We did not understand what those were. When Judge Fitzgerald writes that you were aware of the terms, is that clearly erroneous? We were not aware of the terms. We were not. He made a, you want me to be firmly convinced that he made a mistake in saying that? Yes. We were not aware of exactly what the terms were and what they intended. But, you know, unless practice has changed, typically a settlement offer outlines the broad contours. You accept that subject to writing it up. You're always, you know, the settlement offers don't necessarily contain all the the hundred things that attorneys put ultimately in the final settlement agreement. So it seems that you're demanding that the settlement offer in effect be the final form of the settlement agreement. What we would want, what we wanted was not only that it address an issue that we thought was. I don't know, leaving the issues aside, because those are kind of separate or with respect to the terms and conditions. Without understanding what the other terms are and some of the industry standard I have seen that are not industry standard. Again, I'm using this in a very broad sense from district to district are completely different. Some of them say you will waive rights into the future. Some of them say you agree to waive every claim you could ever have against the kind in any nature. I'm familiar with those. I see those coming in. They are not industry standard. They are not the same from contract to contract, and they are not the same from district to district. I do anticipate having, having done a lot of contracts that when I get the terms, the important terms will be there. And if it's a waiver of right for the student into the future, I will see that. If it's a settlement of all issues, I will see that those things were not in this offer. It was an offer that we will come back and we will add some other things to, things that I was not sure would be. I had no exact clue. I, I, again, I had seen some offers. I had seen some other districts. I had seen some from this district in mediation. Did I know what they were going to offer? No, I did not know what they were going to ask for. No, I did not. And without seeing the specific terms, an offer to come back and make another offer would, I think would be malpractice for me to suggest that my client agree to something without knowing the specific terms. Ms. Whiteleather, I'm surprised you obviously have a great deal of experience in this area that you wouldn't have put on the record at the time of the September offer what you were concerned about. I had, Your Honor. I'm sorry? I had, Your Honor. I had previously communicated that in a letter to the district and indicated step-by-step what we needed to do, including the need to address the child find issue. Where is that in the record? It is. I will find that when I return, but, but we had provided a letter to the district to give them that very clearly. So the, I'm going back to the statute because we've been talking in more generalities at this point. If the relief that you obtained is not more favorable, the statute does provide that you can still get fees if you were substantially justified in rejecting the settlement offer. And so we haven't really been couching it in those terms, but it seems to me that's really your main argument is that you were substantially justified. That is correct. We also, although it's interesting to look at the more favorable than language, we believe that anything that might possibly include language, which we don't have before us because it wasn't in the September 28-12 offer of a waiver of not be more favorable than the decision we ultimately obtained, which did not waive additional rights. But we don't have anything in writing from the district to compare to what we ultimately obtained. So we do believe that what we obtained was more favorable and we believe we were substantially justified. I know we've taken you over your time. So if the district, I just have another question. So if the district needs more time, come back, come back. I'm not done. My question is one I, we didn't touch on here and I know it's been well briefed, but I really did have a question about the paralegal. Because in the affidavit or declaration, it says basically that Dr. Susan Burnett is a qualified paralegal under the Business and Professions Code. And then when you go to the Business and Professions Code and you look about what's required there and it says you have, you know, holding yourself out as a paralegal and then it has various criteria for education and all. Where in the transcript or the record do we see that Dr. Burnett actually meets the criteria of the Business and Professions Code? Because I didn't see anything from her. I provided that. I was the individual certifying under the Business and Professions Code indicating that she had met the requirements. I understand. But now what requirement, did she, she says in her letterhead she's a special education consultant. She talks about her special education criteria. She says she's an advocate. And of course we know under the Business and Professions Code she can't be a legal advocate because that would extend beyond the power of a paralegal. So I'm looking at how she holds herself out and I'm asking you on what basis did you make the representation that she was qualified under the Business and Professions Code? What I had indicated was that, oh, and to go back to my, the letter, if I may, ER 124 is the letter. Thank you. I don't think that's quite the one, but I will get back to you for the minute. Okay. The Dr. Burnett, there was a letter that, that I, or a declaration I had provided with motion. I will cite that in a moment, but we had actually notified the court that she was qualified. I certified her. I've worked with her for a number of years. I know it says that. Yes. And I wrote it. But I mean, I'm asking you what's the basis for saying that? It says it, I'm reading your declaration. It says that she's qualified. And I'm saying what, you know, what's the evidence in the record other than a declaration by you that she's qualified, that she is in fact qualified, that she's holding herself out as a paralegal, that she has the certain education and training background, where is that in the record? It is through my declaration alone. So basically, your declaration that she meets the criteria is all that we're supposed to accept. Yes. It's my understanding that reading the Business and Professions Code, it does not require me to put on a trial regarding the individual qualifications. No, but, you know, if you have an attorney, let's say you're getting attorney's fees, generally, you know, they say I'm licensed to practice, this is my rate, that sort of thing. But I don't see anything in the record or in your affidavit that really ties her to the criteria. And given that, and then given the judge's ruling, I'm having trouble seeing how it was in error. Because we had, I had certified her under Business and Professions Code, I believe, 6450, stating that, in fact, she did meet the qualifications. I'm not aware of any requirement that I put on, put on more proof than that. She had, I explained to the court what she had done, how she sat at my side, how, yes, she wore the advocate hat, but during the period of the due process hearing, she was hired by me as a qualified assistant who would work with me for a number of years, who had the requisite education to qualify her under Business and Professions Code, but she sat at my side, not as an advocate, not as a representative, but as an assistant to me as a paralegal. So that, I will find that letter and provide that to you. All right. Thank you. Thank you. We'll hear from the district. Good morning. May it please the court, Jonathan Mott of Parker and Covert, representing the Anaheim Union High School District. Also present with me is Jeffrey Breal, staff attorney for the high school district who handled the administrative hearing level of the case. Turning to the settlement offer, the offer was sufficiently definite. The statute says an offer of settlement. It doesn't say a settlement agreement. So a council seems to be arguing for a finalized settlement agreement in hand. That's not what the statute says. I think her argument, which has some traction, is that when you say this industry standard, if there isn't an industry standard, she doesn't know what she would be signing up for with respect to downstream waivers or future services or future determinations. So I'd appreciate your response to that. The problem with that argument is that she never came back and asked for clarification. She never asked, what are those terms? There was no request to see a draft agreement. It was basically just no or ignored. And this was not just 10 days before the non-expat hearing. It was continued. So there was plenty of time. There was a couple months in there. The judge, Judge Fitzgerald, in his comments and argument, talked about this possible tendency to perhaps game the system when someone sees that they have a strong case going forward. They get a settlement offer in. And there may be a tendency to just push that to the hearing and run up as much attorney's fees as possible, and then put in a fee claim afterwards, which is what we think went on here. The two cases were entirely separate. There was no need for a ruling in this case, in the second case, to affect the outcome of the first case. And Judge Fitzgerald also addressed that in his decision, saying that he was aware of the ruling in the second case when it came out, and he ruled in the first decision. But he would have ruled the same way, regardless, in the first case. And of course, the statement that a ruling is not a relief, the statute calls for some kind of relief to be obtained. And then a comparison of the relief that was offered versus the relief that was obtained. The relief that was offered was clearly greater than what was obtained, 80 hours of tutoring, 20 hours of compensatory education, reimbursement for a psychologist evaluation, and reasonable attorney's fees were all in the offer. And the result from the ALJ was just six hours of counseling and the evaluation reimbursement. There's really no question there about the value of the offer versus the value of what came out in the hearing. Substantial justification. There has to be a good faith, reasonable belief that the eventual recovery would be higher than the offer. And I think the problem there is that the parent, Mrs. Beecham, admitted at the hearing that she was satisfied with the offer. She was aware of it. And that was put on the record by counsel and the ALJ and referred to in the ALJ's decision. In fact, they went over each term of that, and she said that was fine with her, and she wasn't asking for anything more. And the ALJ seemed to think it curious in her decision as to why someone would take the matter to hearing and then have the parent ask for exactly what had been in the offer a couple months before and not ask for anything more. And the conclusion, again, is it's some sort of a strategic effort on the part of the attorney to leverage the outcome of the case. Mr. Mott, my understanding is that after September 28 of 2012, it wasn't until January or February of 2013 that the evidence was taken before the ALJ. Am I correct? That's correct. So during that three or four month period, was there any discussion between counsel or anybody else about, quote, standard industry release terms, provisions? Was there any discussion about that at all? No, I'm not aware that that came up. And I think that terminology that they've kind of fixated on is really surplusage to the offer. The offer is the substantive items that were offered, the compensatory education, the reimbursement for the evaluation, and the attorney's fees. And then just to refer that there would be a settlement agreement which would have terms, essentially, surplusage at that point. And again, they never came back and asked to see that agreement, see what those terms were. There would have been plenty of time to discuss, negotiate. OK, and the second part of substantial justification, the only case I've seen is there's a, in the briefs, there's a District of Columbia Court of Appeals decision that says the case was being tried while the Murphy case was before the Supreme Court. The question was whether or not reimbursement of an expert was permissible under the statute. The Court of Appeals held that was, the plaintiff was substantially justified in that case. Are you familiar with that case? There's, I think you're talking about, there's case law where it's justification to wait for a pending decision that may be coming in another case that may affect the outcome of your current case. But I think counsel here is trying to twist that around and say that they wanted to take the current case and use it to affect the outcome of the earlier case. Right, other than that DC Court of Appeals case, is there any other cases on substantial justification? I don't have any. OK. And then another point that I'd like to bring up that wasn't referred to is the Section 1415 I3F, which is the unreasonable protraction argument. We raised that at the District Court. The District Judge said he didn't need to rule on that because he ruled based on 1415 I3D and E. But that's, I think, an equally valid argument to understand what happened here. The parent insisted on a lengthy hearing with putting on all the live witnesses after it had been discussed and preliminarily agreed to that they would use the transcripts of the expedited hearing and just a few live witnesses. And we feel that that was perhaps done in an effort to punish the district for not accepting all the demands that were being made from the student at that point. I'd like to also address that issue of the paralegal fees. I think the judge is correct on the facts in that case. There's the Arlington case from the Supreme Court. Someone could be a consultant. Someone could be a paralegal. But in this case, the facts indicated that the person was acting as a consultant, what's called a lay advocate in the special education field. The cases that you see coming to the District Court and the Court of Appeal are just the tip of the iceberg of those special ed cases. There's hundreds or thousands more that are handled by lay advocates and district administrators in hearings and mediations that never go any farther. They're settled. And to have a rule that those advocates could start to come forward and put in claims for fees for that type of thing on the basis that they had done some work that might be paralegal work, like putting together an exhibit book or something, that would be a big change, I think, that would push a lot of those cases up into the district courts, would prevent them from settling at the lower level because of the prospect of fees being awarded against the district. I'll be happy to take any other questions you may have. I think not. Thank you. Thank you. We extended your time with a lot of questions, so I'd like to give you a minute additional. I'm very brief. Surely. Just in response, if you will turn, it's exhibit ER 310, and it's a reference to my 926.13 letter just a few days before addressing some concerns. And that was the letter to which I had referenced, and that is in the documents. The adhering in ER 324 to 325 is a section that we had added, the ER, that references or addresses when the parent was questioned at hearing. And I believe the statement by opposing counsel is a little off. The parent agreed, as we said very clearly, with the offer of remedies. It was the other things that were of concern, the lack of the standard terms, what else was going to be offered, and the issue of child fine, which was out there, which we felt would have a huge impact. And that was, and that's very clear, the ALJ was not concerned. The ALJ said, I can't accept this. So the ALJ said, there's no settlement. And that's what happened, and that is in the record. And yes, we would have accepted those remedies, other things being equal, and the things being addressed that we had requested. Strategic keeps being battered around. We have to make calls that are appropriate for the client. And without the determination of child fine with a pending expedited issue, that could be negatively impacted by a lack of finding of prior child fine eligibility. We made that decision, and it was not to game play. It was just, and it was very clear to opposing counsel, we needed to determine the issue we had brought to hearing. Without that determination, what was the good of raising the issue and seeking a finding from the ALJ? The statement about the length of hearing, it was a five and a half day hearing. We had originally anticipated two days. When we had our pre-hearing conference with the administrative law judge, she very clearly indicated that this was not the expedited hearing, that she would not treat it in the same way, that she thought it was a different issue. And we agreed at that time to admit the administrative record from the expedited hearing. Unfortunately, on the first day of hearing, when I called our expert, Dr. Pissarro, opposing counsel objected and said I had no right to share the prior testimony with Dr. Pissarro. And it caused a lot of time. We did motions, even though there had been an agreement that those documents would be admitted. So there was a lot of time extended. But cross-examination was conducted, again, five and a half days instead of two days, based upon the administrative law judge's statement that this was not going to be the same case as the expedited hearing. It was a different case with a different standard. Thank you. Thank you. Thank both counsel for your arguments this morning. The case just argued of Beauchamp versus Anaheim Union School District is submitted and we're adjourned for the morning.
judges: McKeown, Ikuta, Pratt